# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| JOYCE WHETSTONE | CIVIL ACTION |
| VERSUS | NUMBER 07-9704 |
| JEFFERSON PARISH PUBLIC SCHOOL BOARD | SECTION "L" (3) |

## ORDER & REASONS

Currently pending before the Court are Plaintiff's Motion for Summary Judgment (Rec. Doc. 103); Defendant's Motion for Summary Judgment (Rec. Doc. 126); and Defendant's Motion in Limine to Exclude and/or Limit the Testimony of John Muggivan (Rec. Doc. 129). The Court has reviewed the briefs and heard oral argument and now issues this Order and Reasons.

**I.      Background**

This case arises out of two attacks on Plaintiff Joyce Whetstone, a Jefferson Parish special education teacher, by two of her students. Although this case as an extensive history both in this Court and in numerous related cases pending in state court, certain core facts relevant to the present claims are undisputed. In February, 2001, Plaintiff had been employed by the Jefferson Parish Public School System for almost eighteen years as a special education teacher, the majority of which was spent teaching students with emotional disturbances and behavioral disorders. Around February 22, 2001, she was teaching mostly autistic middle school students, but would also be assigned students from other special education programs.

On February 22, 2001, Plaintiff entered her classroom and was attacked by an autistic student who weighed at least two hundred pounds. She was punched repeatedly on her right

upper body, neck, upper right arm, right shoulder, and right breast. She crouched in a corner trying to protect herself during the attack. A teacher in the classroom next door became aware of the attack and successfully distracted the student. The head of the Special Education Department called the student away from Plaintiff's classroom, and the student left.

The record indicates that shortly thereafter, a meeting took place between Plaintiff, the grandmother of the student who attacked Plaintiff, and the principal of the school. According to the Plaintiff, both she and the grandmother requested that the student be moved to a different class, but that request was denied. Plaintiff continued to work.

On March 8, 2001, approximately two weeks after the first attack, Plaintiff took a group of students to a grocery store as part of a community skills education program, along with an assistant who was an elderly woman. Plaintiff requested that she not be required to take the student who had attacked her on February 22 to the grocery store; her supervisor denied that request, but Plaintiff nonetheless left the student behind. At the grocery store, a different student bit Plaintiff on the hand. Plaintiff remained at work for another week, until March 15, 2001. On March 15, 2001, she was placed on disability leave pursuant to the opinion of a Dr. Kretchler that she was temporarily totally disabled on the basis of neck pain. Plaintiff received "assault pay" pursuant to a Louisiana statute.

Plaintiff attempted to return to work for part of one day on October 30, 2001, but was sent home after the school nurse found that she had very high blood pressure. Other than October 30, 2001, Plaintiff remained on disability leave through August or October, 2005 (it is unclear from the record) and did not work at all during that period. Plaintiff also alleges that she was terminated, but she does not state the specific day. The parties dispute whether Plaintiff was

terminated or whether she took a medical retirement.

Following the February 22 and March 8, 2001 attacks, Plaintiff began to receive medical treatment. She was initially referred by her Workers Compensation Carrier to Dr. Jeffrey J. Sketchler for evaluation and examination. Dr. Sketchler recommended further treatment and the Workers Compensation Carrier approved evaluation and treatment at the Medical Musculoskeletal Institute ("MMI"). At the MMI, Plaintiff was treated by Dr. Kevin J. Bianchini, a neuropsychologist, and Dr. Karen Ortenberg, a physician who is board certified in physical medicine and rehabilitation. Plaintiff was treated by Dr. Ortenberg from December 5, 2001, through until approximately March of 2004. While Dr. Ortenberg was treating the Plaintiff, the doctor was also communicating certain information about the treatment and Plaintiff's progress to the School Board and their Workers Compensation Carrier. These communications often contained opinions and recommendations about Plaintiff's progress and her ability to return to work under certain conditions.

On July 28, 2006, Plaintiff filed a state court Petition for Damages in the 24th Judicial District for the Parish of Jefferson which named Dr. Ortenberg as a defendant. On January 19, 2007, Plaintiff filed a Medical Review Panel Complaint with the Division of Administration. On March 5, 2007, the state court granted an exception of prematurity and dismissed Plaintiff's claims against Dr. Ortenberg without prejudice. On December 19, 2007, Plaintiff filed the instant lawsuit in this Court, initially naming only the School Board as a Defendant. On September 30, 2009, Plaintiff amended her complaint to include claims against Dr. Bianchini and on November 16, 2009, she amended her complaint to include claims against Dr. Ortenberg.

In her Third Amended Complaint, Plaintiff asserted claims against all Defendants under

the Americans with Disabilities Act ("ADA"), claims alleging constitutional violations of procedural and substantive due process, and state law claims for negligence, intentional infliction of emotional distress, and the breach of the standard of care owed by a doctor to their patient. Dr. Bianchini and Dr. Ortenberg filed motions to dismiss, which the Court granted on May 12, 2010. The Jefferson Parish School Board is the only remaining Defendant and the case is set for trial.

**II.     Present Motions**

The Court has pending before it cross-motions for summary judgment, as well as a motion to exclude Plaintiff's proposed expert witness.

First, Plaintiff moves for summary judgment in her favor. She argues that there is no genuine dispute of fact that she was disabled within the meaning of the ADA because she experienced post-traumatic stress disorder (PTSD) and other stress; that she was otherwise qualified to continue to do her job; and that Defendant failed to accommodate her disability and later wrongfully terminated her.

Second, Defendant moves for summary judgment. It argues that as a matter of law Plaintiff was *not* disabled, was not qualified for her job, and did not ask for an accommodation. Defendant also moves for summary judgment on Plaintiff's state-law claims, as well as limitations on available damages.

Third, Defendant has moved to exclude or limit testimony from John Muggivan, a Licensed Clinical Social Worker identified by Plaintiff as an expert witness.

**III.    Law & Analysis**

**A.      Standard on Motions for Summary Judgment**

A district court can grant a motion for summary judgment only when the "the movant

shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When considering a motion for summary judgment, the district court "will review the facts drawing all inferences most favorable to the party opposing the motion." *Reid v. State Farm Mut. Auto. Ins. Co.*, 784 F.2d 577, 578 (5th Cir. 1986). The court must find "[a] factual dispute . . . [to be] 'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party . . . [and a] fact . . . [to be] 'material' if it might affect the outcome of the suit under the governing substantive law." *Beck v. Somerset Techs., Inc.*, 882 F.2d 993, 996 (5th Cir. 1989) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

"If the moving party meets the initial burden of showing that there is no genuine issue of material fact, the burden shifts to the non-moving party to produce evidence or designate specific facts showing the existence of a genuine issue for trial." *Engstrom v. First Nat'l Bank of Eagle Lake*, 47 F.3d 1459, 1462 (5th Cir. 1995). The mere argued existence of a factual dispute will not defeat an otherwise properly supported motion. *See Anderson*, 477 U.S. at 248. "If the evidence is merely colorable, or is not significantly probative," summary judgment is appropriate. *Id.* at 249-50 (citations omitted).

**B.    Analysis**

Although it appears that the parties dispute many facts, that appearance is largely due to the parties' opaque briefing. Notwithstanding any peripheral confusion and obfuscation, the core of undisputed facts material under the ADA, taken in the light most favorable to the Plaintiff, demonstrate that as a matter of law that Plaintiff has no viable discrimination or failure-to-accommodate claim under the ADA.

As a threshold matter, the scope of the alleged discrimination began in 2001 and ended in 2005; suit was filed in 2007. The Americans with Disabilities Act has since been amended, but the Court must apply the ADA and the corresponding regulations as they existed at the time of the incidents in question. *See Winborne v. Sunshine Health Care, Inc.*, 402 F. App'x 875, 878 n.2 (5th Cir. 2010).

The ADA prohibits discrimination against employees:

> No covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.

42 U.S.C. § 12112(a). Discrimination can include "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity." *Id.* at 12112(b)(5)(A).

To prevail on an ADA claim, an employee must establish that (1) she is disabled within the meaning of the ADA, (2) she is qualified and able to perform the essential functions of her job, and (3) her employer had notice of her disability and failed to provide accommodation. *See Mzyk v. N. E. Ind. Sch. Dist.*, 397 F. App'x 13, 15 n.3 (5th Cir. 2010). The Court will set out the law applicable to those elements and then explain why Plaintiff cannot establish a *prima facie* case of discrimination.

**1)      Elements of an ADA Claim**

At all relevant times, the ADA defined "disability" as follows:

> (2) Disability
> The term "disability" means, with respect to an individual–
>> (A) a physical or mental impairment that substantially limits one or more major life activities of such individual;
>> (B) a record of such an impairment; or
>> (C) being regarded as having such an impairment.

42 U.S.C. § 12102 (2007). The statutory definition of "disabled" "'needs to be interpreted strictly to create a demanding standard for qualifying as disabled.'" *Waldrip*, 325 F.3d at 654 (quoting *Toyota Motor Mfg., Ky., Inc. v. Williams*, 534 U.S. 184, 197 (U.S. 2002)). The Court must "conduct a rigorous and carefully individualized inquiry into [Plaintiff's] claimed disability to fulfill [the] statutory obligation to determine the existence of disabilities on a case-by-case basis." *Id.* (quotation omitted).

This case implicates only the subsection (A) definition of disability, which requires three showings: that Plaintiff had an "impairment," that a "major life activity" was limited by the impairment, and that the impairment "***substantially*** limits" that major life activity. *See Waldrip v. Gen. Elec. Co.*, 325 F.3d at 654. An impairment is defined as:

> (1) Any physiological disorder, or condition, cosmetic disfigurement, or anatomical loss affecting one or more of the following body systems: neurological, musculoskeletal, special sense organs, respiratory (including speech organs), cardiovascular, reproductive, digestive, genito-urinary, hemic and lymphatic, skin, and endocrine; or
> (2) Any mental or psychological disorder, such as mental retardation, organic brain syndrome, emotional or mental illness, and specific learning disabilities.

29 C.F.R. § 1630.2(h).[1] The impairment must also affect a "major life activity". "Major life activities" are "those activities that are of central importance to daily life, and activities that are central to the life process itself." *Waldrip*, 35 F.3d at 655 (quotations omitted). At all relevant

---

[1] The regulations are not controlling or entitled to *Chevron* deference, but the Fifth Circuit considers them to be persuasive authority. *See Waldrip*, 325 F.3d at 655 n.1.

times, regulations defined a "major life activity" as including "caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(i). Finally, the impairment must *substantially limit* a major life activity. This requirement "is the linchpin of § 12102(2)(A). Without it, the ADA would cover any minor impairment that might tangentially affect major life activities such as breathing, eating, and walking. For this reason, an impairment must not just limit or affect, but must *substantially* limit a major life activity." *Waldrip*, 324 F.3d at 655 (emphasis in original). "Permanency, not frequency, is the touchstone of a substantially limiting impairment." *Id.* (quotation omitted).

Second, Plaintiff must be a "qualified individual with a disability." That term is defined as "an individual with a disability who, *with or without reasonable accommodation*, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8) (emphasis added).

Third, Plaintiff must show that Defendant had notice of her disability but failed to provide an acommodation. *See Mzyk*, 398 F. App'x at 15 n.3. "To prove discrimination, an employee must show that the employer knew of such employee's substantial physical or mental limitation." *Taylor v. Principal Fin. Group, Inc.*, 93 F.3d 155, 164 (5th Cir. 1996). "[I]t is important to distinguish between an employer's knowledge of an employee's disability versus an employer's knowledge of any limitations experienced by the employee as a result of that disability." *Id.* "This distinction is important because the ADA requires employers to reasonably accommodate limitations, not disabilities." *Id.* "[A]n employer cannot be liable for [violating the ADA] on the basis of behavior that is caused by a disability if the employer is not told of the disability (unless the disability has obvious manifestations)." *See Tullos v. City of Nassau Bay*,

137 F. App'x 638, 646 (5th Cir. 2005); *see also Dooley v. Parks & Rec. for Parish of East Baton Rouge*, 433 F. App'x 321, 325-26 (5th Cir. 2011) (affirming grant of summary judgment against plaintiff who had not made defendant employer aware of claimed PTSD until after she was terminated).

In addition, "[i]n general it is the responsibility of the individual with the disability to inform the employer that an accommodation is needed." *Taylor*, 93 F.3d at 165 (alteration and quotation omitted). Once a request for an accommodation has been made, "the responsibility for fashioning a reasonable accommodation is shared between the employee and employer" through an "interactive process." *Id.* "If the employee fails to request an accommodation, the employer cannot be held liable for failing to provide one." *Id.*

To present a *prima facie* case (either in support of her own motion or to defeat Defendant's cross-motion), Plaintiff must present evidence raising a fact issue that she had an impairment that substantially limited a specific life activity; that at the time she was disabled she was nonetheless qualified to return to work; and that Defendant had notice of this impairment but failed to accommodate her.

**2)    Application**

Defendant correctly points out that Plaintiff alleges discrimination over a period of several years, and that the pertinent facts changed at different phases in that period of alleged discrimination. The Court concludes that at no point during the period of alleged discrimination can Plaintiff establish a genuine factual dispute as to all three elements of her *prima facie* case. Plaintiff has not raised a genuine fact issue that she was ever disabled within the meaning of the ADA, and moreover there is no single point in time at which Plaintiff was qualified to return to

work while Defendant was simultaneously aware of her PTSD (assuming for the sake of argument that the condition constitutes a disability under the ADA).

    **a)**    **Disability**

With respect to the disability element, Plaintiff argues that she suffers from PTSD and related impairing symptoms caused by the attacks against her. The Court will assume for the sake of argument that Plaintiff raises a fact issue that she was impaired, either physically in the form of elevated blood pressure and heart rate or psychologically in the form of fear and stress.

But "PTSD ... standing alone, is not necessarily a ***disability*** contemplated by the ADA." *Hamilton v. Southwestern Bell Tel. Co.*, 136 F.3d 1047, 1050 (5th Cir. 1998) (emphasis added). "The statute requires an impairment ***that substantially limits one or more of the major life activities***." *Id.* (emphasis added). In her briefing Plaintiff does not sufficiently articulate a life activity limited by her PTSD, nor does she present evidence raising a fact issue as to how any limitation was substantial. To the extent that Plaintiff might argue that she was substantially limited in the major life activity of working, a person is only substantially limited in the major life activity of working if she is significantly restricted from performing "a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills, and abilities." *See Aldrup v. Caldera*, 274 F.3d 282, 286-87 (5th Cir. 2001) (quotation omitted). Plaintiff's alleged inability to return to work with special education students "would merely tend to show that [plaintiff] was unable to perform any job at one specific location, and is not evidence of [her] general inability to perform a broad class of jobs." *See id.* at 287 (affirming grant of summary judgment). And other than working, even read generously Plaintiff has not articulated any other major life activity impacted by her alleged

PTSD.  The Court will not speculate beyond what Plaintiff herself has failed to argue.  Thus, Plaintiff has not raised a genuine fact issue as to the disability element of her *prima facie* case.

### b) Qualified Individual, Discrimination

Even if Plaintiff had established her *prima facie* case that she was disabled, Plaintiff still loses on summary judgment.  Between February 22, 2001, the date of the first attack, and October 2005, at which time Plaintiff alleges she was terminated, there was no time at which Plaintiff was both qualified for her position as required under the ADA *and* Defendant was simultaneously aware of her alleged disability such that it could have discriminated against her.

### i) February 22 through March 15, 2001

From February 22 to March 15, 2001, Plaintiff actually continued working, which supports her *prima facie* case that she was qualified for her position at that time.  But for Defendant to have discriminated against her on the basis of a disability *at that time*, Defendant must have either been aware of her disability and the limitations it imposed on a substantial life activity, or those limitations must have been open and obvious.  *See Tullos*, 137 F. App'x at 646. The record reflects that Plaintiff was not diagnosed with PTSD until at least 2003, and that diagnosis was not conveyed to Defendant until 2004 or 2005.

But Plaintiff contends that she was disabled immediately after the February 22, 2001 attack, and that Defendant discriminated against her immediately thereafter by failing to make reasonable accommodations.  Accordingly, she contends that her disability was open and obvious and that she did not have to inform Defendant that she had PTSD or some other physical or mental disability.  Plaintiff picks and chooses from various medical treatment records from 2001 and 2002 stating that Plaintiff reported or displayed symptoms of stress.  She also argues

that following the attack, she was panicky and preferred to stay close to walls and suffered from high blood pressure.

Defendant responds that Plaintiff was definitely not openly and obviously disabled within the meaning of the ADA. Defendant cites the same medical records for the proposition that Plaintiff was being treated for neck pain and her recovery from that condition, and not for PTSD or stress.

Plaintiff remained at her job for only three weeks after the first incident. During that period, the record reflects that she displayed neck pain and behaved in a panicked fashion, including preferring to stay close to walls. Plaintiff was not formally diagnosed with PTSD until years later. On the basis of Plaintiff's evidence, even making all inferences in her favor, no reasonable trier of fact could find that Plaintiff openly and obviously had PTSD that rose to the level of a disability protected by the ADA. In the absence of notice that Plaintiff had a disability, Defendant could not have discriminated against her on that basis, at least between February 22, 2001 and March 15, 2001.

ii) **March 15, 2001 through Plaintiff's Termination/Retirement**

The Court will assume for the sake of argument that there is a genuine factual dispute that at some point after March 15, 2001, Defendant became aware of Plaintiff's diagnosis and even that it was aware that she had limitations that rendered her disabled within the meaning of the ADA.[2] But at all times after March 15, 2001,[3] Plaintiff was on disability leave and receiving "assault pay." Pursuant to Louisiana law, "[a]ny member of the teaching staff of the public

---

[2]As explained above, Plaintiff has not met her burden to establish a *prima facie* case as to that element.

[3]With the exception of one portion of one day in October, 2001.

-12-

schools who is injured or disabled while acting in his official capacity as a result of assault or battery by any student or person shall receive sick leave without reduction in pay and without reduction in accrued sick leave days *while disabled as a result of such assault or battery*." La. Rev. Stat. § 17:1201(C)(1)(a) (emphasis added). A party who received disability benefits is not necessarily estopped from also claiming that she was simultaneously qualified for work within the meaning of the ADA, but she must explain that inconsistency. *See Holtzclaw v. DSC Commc'ns Corp.*, 255 F.3d 254, 258-59 (5th Cir. 2001).

Defendant raised this point in its cross-motion for summary judgment, and Plaintiff completely failed to respond. In her original motion, Plaintiff simply argues that she "was qualified for her position after her initial injuries had the defendant timely provided reasonable accommodations." (Rec. Doc. 103-1 at 3). At oral argument, counsel for Plaintiff reiterated that she could have returned to her job if she had an accommodation in the form of a safe work environment. But the ADA requires that Plaintiff be qualified for her job with *or without* an accommodation; Plaintiff's argument that she was qualified if she had received an accommodation defeats her claim. In short, there is a fundamental inconsistency between Plaintiff's receipt of those disability benefits with her contention that she was simultaneously qualified to return to work. Plaintiff has not addressed that inconsistency, and on these facts it is fatal to her claim that she was qualified to return to work at any time after March 15, 2001.[4]

To sum up, it is regrettable that Plaintiff was attacked and that she attributes her ongoing

---

[4]The Court has not been able to discern from the record any evidence that Plaintiff was actually terminated from her position in 2005, rather than simply being removed from assault pay status. To the extent that this leaves open a narrow window in which Plaintiff was once again qualified to return to work, Plaintiff has still failed to adduce competent summary judgment evidence that she was actually disabled within the meaning of the ADA.

mental health issues to the attacks.  Nonetheless, Plaintiff has not carried her burden to show that her subsequent dispute with her employer gives rise to a claim cognizable under the Americans with Disabilities Act.  Plaintiff's motion for summary judgment is denied, and Defendant's motion for summary judgment is GRANTED with respect to the ADA failure-to-accommodate claim.

### C. Other Claims

Defendant moved for summary judgment on a number of other grounds and subjects, including timeliness, the available damages, and Plaintiff's claims under state tort law.  Additionally, Plaintiff in her complaint asserts two claims that have not been addressed in the motions for summary judgment.  The Court will clarify precisely what remains pending and what additional proceedings are necessary before trial.

#### 1) Timeliness

First, Defendant argues in its cross-motion that many if not all of Plaintiff's ADA claims are prescribed because she did not timely file her EEOC complaint.  Plaintiff did not respond to this argument. However, because Plaintiff has no viable ADA failure-to-accommodate claim, the Court need not address the timeliness issue.

#### 2) State-Law Claims

Second, Defendant also makes a number of arguments against Plaintiff's state-law tort claims.  Plaintiff did not respond to any of these arguments.

Defendant argues that Plaintiff's tort claims are already the subject of a parallel state court litigation and therefore this case should be dismissed pursuant to *Colorado River* abstention.  *Colorado River* abstention is not appropriate in this thoroughly routine case.

Defendant argues that the Worker's Compensation law provides Plaintiff's sole remedy for her injury incurred during the course and scope of employment and prohibits her from suing Defendant for negligence. La. Rev. Stat. § 1032(A)(1)(a). Defendant also argues that, although Plaintiff has pleaded a claim for intentional infliction of emotional distress which theoretically could be an intentional tort that falls outside the worker's compensation scheme, as a matter of law fails to show intentional infliction of emotional distress. Under Louisiana law, "in order to recover for intentional infliction of emotional distress, a plaintiff must establish (1) that the conduct of the defendant was extreme and outrageous; (2) that the emotional distress suffered by the plaintiff was severe; and (3) that the defendant desired to inflict severe emotional distress or knew that severe emotional distress would be certain or substantially certain to result from his conduct." *White v. Monsanto Co.*, 585 So. 2d 1205, 1209 (La. 1991). Plaintiff did not respond to either of these arguments or defend her state-law claims. Accordingly, summary judgment is granted as to all claims brought under Louisiana law.

### 3) Damages

Defendant also moves for summary judgment on the issue of availability of compensatory and punitive damages under the ADA. "A plaintiff asserting a private cause of action for violations of the ADA ... may only recover compensatory damages upon a showing of intentional discrimination." *Delano-Pyle v. Victoria Cty*, 302 F.3d 567, 574 (5th Cir. 2002). Punitive damages are not available under private ADA claims. *Barnes v. Gorman*, 536 U.S. 181, 189 (2002). Finally, Plaintiff argues that it benefits from the $500,000 limit of liability set by the Louisiana Governmental Claims Act, exclusive of "medical care and related benefits and loss of earnings, and loss of future earnings." La. Rev. Stat. § 13:5106(B)(1). Plaintiff did not file an

opposition to Defendant's cross-motion and did not address this argument. Plaintiff did not file an opposition addressing any of these arguments. Defendant's motion is granted as unopposed on the question of damages.

### D. Claims Not Addressed by the Briefing

Finally, Plaintiff's pleadings invoke causes of action for hostile work environment harassment and retaliation in violation of the ADA, and violations of procedural and substantive due process. The parties have not addressed these claims in their cross-motions. The hostile work environment claim fails as a matter of law, but it is unclear whether Plaintiff still intends to pursue the remaining claims.

#### 1) Harassment

First, Plaintiff pleads in her complaint a claim for disability-based workplace harassment. Under these circumstances, it is appropriate to grant summary judgment *sua sponte* on that claim. To succeed on a harassment claim, "the disability-based harassment must be sufficiently pervasive or severe to alter the conditions of employment and create an abusive working environment." *Flowers v. S. Reg'l Physician Servs. Inc.*, 247 F.3d 229, 236 (5th Cir. 2001). The undisputed record shows that Plaintiff was only in a working environment with Defendant for approximately three weeks during the entire time period at issue. Moreover, she has not presented any evidence of disability-based harassment. As a matter of law, Plaintiff has not shows disability-based harassment.

#### 2) Retaliation

Second, Plaintiff pleads in her complaint disability-based retaliation under the ADA. "To show an unlawful retaliation, a plaintiff must establish a prima facie case of (1) engagement in

an activity protected by the ADA, (2) an adverse employment action, and (3) a causal connection between the protected act and the adverse action." *Seaman v. CSPH, Inc.*, 179 F.3d 297, 301 (5th Cir. 1999) . To pursue a retaliation claim, Plaintiff need not actually be disabled, but rather must have a good faith belief that the ADA has been violated. *Tabatchnik v. Continental Airlines*, 262 F. App'x 674, 676 (5th Cir. 2008). If Plaintiff establishes the *prima facie* case, Defendant must come forward with a legitimate, non-discriminatory reason for the adverse employment action. *Id.* If that reason is provided, Plaintiff must produce evidence that the proffered reason is a pretext and that but for his protected activity, the adverse employment action would not have occurred. *Id.*

The parties have not briefed the merits of Plaintiff's retaliation claim. The Court notes that, to the extent that she predicates the claim on any conduct before October, 2005, the claim appears to be entirely redundant of her failed accommodation claim. To the extent that she predicates the claim on the alleged October, 2005 termination, the record does not suggest any specific protected activity that could have prompted that alleged retaliation. Thus, the retaliation claim appears poorly-supported. The Court is entitled to enter summary judgment on a claim *sua sponte* with proper notice to a party to come forward with all of her evidence. *E.g.*, *Tolbert ex rel. Tolbert v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 657 F.3d 262, 270-71 (5th Cir. 2011). Accordingly, if Plaintiff intends to pursue her retaliation claim, she shall file a memorandum and exhibits articulating her evidence in support on or before April 9, 2012.

Likewise, Plaintiff asserts violations of substantive and procedural due process in her pleadings. To the extent that Plaintiff intends to pursue those claims, she shall file a memorandum and exhibits articulating her evidence in support on or before April 9, 2012.

### E. Motion to Exclude

Defendant also moves to exclude expert testimony from Plaintiff's witness John Muggivan. The Court will hold that motion in abeyance, pending further developments in the case. If there will be no trial in the case, the motion will be moot.

## IV. Conclusion

For the foregoing reasons, IT IS ORDERED that Plaintiff's Motion for Summary Judgment is DENIED and Defendant's Motion for Summary Judgment is GRANTED IN PART with respect to the damages issue and with respect toPlaintiff's claims for discrimination and harassment under the ADA and her claims under Louisiana state tort law, which are DISMISSED WITH PREJUDICE. To the extent that she still pursues claims for retaliation under the ADA and denial of due process, Plaintiff shall submit a brief on or before April 9, 2012 articulating why summary judgment on those remaining claims is not appropriate.

New Orleans, Louisiana, this 27th day of March, 2012.

_____

United States District Judge